UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:  Terry L. Hall,                              Case No. 14-30050
              Debtor.                          Chapter 7
_____

Appearances:

| | |
|---|---|
| James F. Selbach, Esq. | James J. O'Shea, Esq. |
| *Counsel for Debtor* | *Counsel for Syracuse Community* |
| Selbach Law Firm, PLLC | *Health Center, Inc.* |
| Suite 290 | 1500 AXA Tower I |
| 290 Elwood Davis Drive | 100 Madison Street |
| Liverpool, NY 13088 | Syracuse, NY 13202 |

**Memorandum-Decision and Order**

This contested matter is before the court following a hearing on damages on Debtor's motion for sanctions for Syracuse Community Health Center, Inc.'s ("Health Center") willful violation of the automatic stay pursuant to 11 U.S.C. § 362(k). (Doc. 20) ("Motion").[1] In a prior order the court (i) found that Health Center willfully violated the automatic stay when, on notice of Terry Hall's ("Debtor") bankruptcy, it sent two billing statements to the Debtor and (ii) set a discovery schedule and deadlines for the hearing on damages. (order at Doc. 39).[2] For the reasons that follow, the court awards actual damages in the amount of $755.

*Background Facts*

Debtor, through Susan Esce, Esq., of Esce Law, P.C., filed a chapter 7 petition on January 16, 2014. On that same date, Attorney Esce filed the required Rule 2016(b)[3] Disclosure of Compensation of Attorney for Debtor form ("2016(b) Statement"). It reflects her agreement to accept $850 in exchange for providing the Debtor with legal services "for all aspects of the

---
[1] All sectional references are to title 11 of the United States Code.
[2] An amended order reset the evidentiary hearing and related deadlines. (order at Doc. 42) ("Order").
[3] Unless stated otherwise, all Rule references are to the Federal Rules of Bankruptcy Procedure.

bankruptcy case including ... [r]epresentation of the debtor in adversary proceedings and other contested bankruptcy matters... ." (Doc. 1). Attorney Esce has not filed an amended 2016(b) Statement.

Debtor filed the Motion against the Health Center, a local non-profit health care provider, through James F. Selbach, Esq., of Selbach Law Firm, PLLC. The Motion is based on two monthly billings dated February 11 and March 6, 2014, sent to the Debtor in an attempt to collect a $560.96 medical bill for services provided to the Debtor prepetition.[4] At the time of the hearing on damages Attorney Selbach had not filed a 2016(b) Statement, an omission which the court inquired about at the hearing. The next day, Attorney Selbach filed a 2016(b) Statement. It discloses an agreement with Attorney Esce to share attorney's fees recovered on the motion for sanctions. According to Attorney Selbach's 2016(b) Statement, Attorney Esce is not a member of or associated with the Selbach Law Firm. The agreement calls for Attorney Esce to receive 25% of all attorney's fees recovered. Further, pursuant to the agreement, the formula for payment of attorney's fees depends upon whether the award results from a settlement or is determined by the court. Should the matter settle, the settlement amount is payable in order as follows: (1) deduction of costs; (2) $300 to the Debtor; (3) $1,000 to the attorneys subdivided at the 25:75 ratio; and (4) balance divided 50:50 between the Debtor and the attorneys, who share between themselves at the 25:75 ratio. Alternatively, if the matter does not settle and the court awards attorney's fees, the amount awarded would then be shared between the attorneys at the agreed 25:75 ratio.

---

[4] The Motion was filed on April 22, 2014. Had there been a further monthly billing sent to the Debtor in April, it presumably would have been included in the motion papers or referenced in the proceeding. The Joint Stipulation of facts filed by the parties confirms that there was no further contact by Health Center with the Debtor after the two billing statements were sent. (Doc. 49 at ¶ 3).

2

The court considered two interim motions in advance of the hearing on damages. First, after discovery closed, Debtor filed a motion to compel Health Center to respond to interrogatories and produce documents aimed at identifying Health Center protocols and procedures in the handling of mail and accounts subject to a bankruptcy notice. Health Center objected to the discovery on the grounds that the information sought was (i) relevant only to a claim for punitive damages, which were not claimed by Debtor, and (ii) not relevant and immaterial to the consideration of emotional distress and other actual damages incurred by the Debtor, which was the focus of the damages hearing set by the court. At an expedited hearing on the motion to compel, the court denied the motion as (i) untimely because it was brought after the close of discovery; and (ii) procedurally deficient as lacking the required certification that Mr. Selbach had "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37.[5]

Second, Health Center moved to dismiss Debtor's Motion for Debtor's failure to timely comply with the Order's directive to file exhibit lists, witness lists and a pre-trial statement by the specified deadlines. (Doc. 54). Although the court declined to dismiss the Motion, in recognition of the resulting prejudice to Health Center with respect to litigating the issue of emotional distress damages when required disclosures had not been made, the court limited the hearing to oral argument on the issue of attorney's fees and directed Debtor's counsel to file an affirmation and detailed time records in support of his request for attorney's fees as actual damages. (text order at Doc. 56).

### *Requested Attorney's Fees*

Mr. Selbach seeks $3,880 in attorney's fees for services rendered through the scheduled

---

[5] *See* Rule 7037, made applicable to contested matters by Rule 9014(c).

3

evidentiary hearing. (Docs. 57 and 62). Health Center objects to any award of fees in this matter based on its claim that Attorney Selbach engaged in excessive litigation of this matter for his own gain. As support for its position, Health Center cites the fact that it made a $550 offer of settlement six days before the initial return date of the Motion. That offer was rejected even though it would have resolved this matter early on when attorney's fees on both sides were relatively low. Health Center further objects to Attorney Selbach's fee application on the grounds that (i) time entries are inadequate, in that the name and credentials of the "Legal Assistant" whose time is billed are not provided nor are the dates when services were rendered; and (ii) time billed is inflated and/or represents time for unnecessary work. (Doc. 58).

In addressing the $3,880 of attorney's fees requested, the court inquired at the hearing whether Mr. Selbach had read Attorney Esce's 2016(b) Statement and why he had not separately filed his own 2016(b) Statement as required by the Bankruptcy Code and Rules. The court requested Mr. Selbach to recite the terms of his engagement on the record. The court inquired of Health Center's counsel, Attorney O'Shea, how many hours he had spent defending the Motion and his hourly billable rate. Attorney O'Shea estimated that he had spent approximately 15 to 20 hours which, at his hourly rate of $185/hour, brings his client's attorney's fees to between $2,775 and $3,700.

### *Attorney Representation of Debtor*

Every attorney who represents a debtor must comply with the requirements of § 329(a) which provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of

4

or in connection with the case by such attorney, and the source of such compensation.

Rule 2016(b), which governs the filing and contents of the statement of compensation required by § 329(a), further provides:

> **Every attorney for a debtor**, whether or not the attorney applies for compensation, **shall file** and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, **the statement required by § 329 of the Code** including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. **A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.**

*Id.* (emphasis added). The language of Rule 2016(b) makes clear that Attorney Selbach was required to file a statement of compensation in this case at the time he was retained by the Debtor for purposes of bringing the Motion. *In re Ortiz*, 496 B.R. 144, 150 (Bankr. S.D.N.Y. 2013) ("[A] separate Rule 2016(b) statement must be filed by 'every attorney for a debtor' that falls within the scope of § 329(a) . . . ."). Neither Attorney Esce nor Attorney Selbach complied with their respective obligations under § 329(a) and Rule 2016(b). If motions for sanctions had been specifically excluded from attorney Esce's comprehensive services agreement, she had an obligation to supplement her 2016(b) Statement within 14 days of the date she entered into the fee sharing agreement with Attorney Selbach. *See, e.g., In re Buckner*, 350 B.R. 874, 878 (Bankr. D. Idaho 2005). Absent the filing of a supplemental 2016(b) statement, Attorney Esce is bound by the terms of her original agreement with the Debtor as disclosed to the court.

An attorney's "[d]isclosure of compensation pursuant to § 329(a) and Rule 2016(b) is mandatory, not permissive." *Ortiz*, 496 B.R. at 148. Failure to properly disclose a fee agreement subjects counsel to sanctions—even in the absence of other inappropriate conduct. *Buckner*, 350

5

B.R. at 878. "The approach within the Second Circuit 'has uniformly been to decide Bankruptcy Code and Rule disclosure violations with an inflexible standard. No exceptions are to be made based upon inadvertency (slipshodness) or good faith.'" *In re Laferriere*, 286 B.R. 520, 526 (Bankr. D. Vt. 2002) (quoting *In re Kero-Sun, Inc.*, 58 B.R. 770, 779-80 (Bankr. D. Conn. 1986) (citing *General Motors Acceptance Corp. v. Updike (In re H. L. Stratton, Inc.)*, 51 F.2d 984 (2d Cir. 1931)). "Anything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied." *Cohn v. United States Trustee (In re Ostas)*, 158 B.R. 312, 321 (N.D.N.Y. 1993) (quoting *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991). "The court may exercise its discretion to deny or reduce fees for counsel's failure to disclose its fee arrangements *whether or not actual harm* accrues to the estate." *In re Ostas*, 158 B.R. at 321 (quoting *In re Saturley*, 131 B.R. at 517).

At the outset, Attorney Esce agreed to represent the Debtor in "all aspects" of the case including contested matters for a sum certain and did not unbundle from the services agreed to be rendered the prosecution of a motion for sanctions. There is no basis to allow Attorney Esce to share in any attorney's fees awarded by this court on the present motion. It was incumbent upon Attorney Esce to file a supplemental 2016(b) Statement in advance of the court's consideration of this matter. For her failure to do so and under the terms of her original agreement with the Debtor, the court declines to approve any additional fee award to Attorney Esce. The court addresses below Attorney Selbach's failure to timely comply with his obligations under § 329(a) and Rule 2016(b).

*Damages for Willful Violation of the Automatic Stay*

Prior to addressing the reasonableness of the attorney's fees sought in this matter, the court observes that the fee structure employed in this case (and other similar cases handled by

6

Attorney Selbach) has the predictable effect of inhibiting early settlement of such motions at reasonable settlement amounts, thereby unnecessarily increasing attorney's time and fees on both sides of the aisle.[6] Attorney Selbach's fee structure depends on whether the motion for sanctions is settled as between the parties or decided by the court. At the time that the Health Center made its $550 offer of settlement in this matter, Attorney Selbach's attorney's fees, as reflected by his firm's submitted time records were $607.50. The court notes that the $550 offer represented 90% of the fees incurred on behalf of the Debtor through that date. When the $550 offer is measured for distribution according to the fee structure, the Debtor would have received the first $300 and Attorneys Esce and Selbach would have respectively received $62.50 and $187.50, an award, no doubt, considered unworthy of consideration by counsel. A debtor who has been promised an initial cut of the proceeds will receive no more than the initial $300 unless the settlement amount exceeds $1,300. Similarly, under this fee structure, until the proposed settlement amount reaches approximately $1,100, Attorney Selbach may not be fully compensated for his hours spent on the motion. From this example, it appears fair to infer that this fee structure is likely to drive an "acceptable" settlement amount upward in a manner divorced from the actual value of the claim. With such a fee structure in place—of which Health Center would have been totally unaware since no 2016(b) Statement was on file—it is no surprise that the $550 offer was rejected.

This arrangement disincentivizes settlement of motions for sanctions where the violation is non-egregious such that punitive damages are unavailable and a claim for emotional distress damages is unlikely to be proven, *i.e.*, a classic example of a case that should be settled for a nominal amount. This fee arrangement creates a monetary award for a debtor that otherwise

---

[6]Notwithstanding Attorney Selbach's statement on the record that this court has previously passed on the fee structure in approving prior settlements of similar motions presented to the court, this court has not previously considered the effect the fee structure has on settlements of motions for sanctions.

7

does not exist under the Code.[7] This is particularly so at the pleading stage when the circumstances underlying an emotional distress claim—which is presumably the basis for a fee arrangement that compensates a debtor with the initial $300—are solely within the knowledge of a debtor, such that debtor's counsel should be able to evaluate whether the claim meets the heightened standard to recover emotional distress damages.[8]

In the case of a non-egregious violation, the practical impact of this fee structure is to force a creditor to choose one of two undesirable options. The creditor may make a business decision to offer a settlement amount that exceeds its assessment of the fair value of the claim in order to cap its own defense costs arising from protracted proceedings and extended discovery and, in essence, pay the value of a portion of those anticipated fees over to the debtor at the outset. Alternatively, the creditor may choose to continue to litigate to defend against a claim that invariably will fail to meet the heightened standards for recovery of punitive and emotional distress damages. Recovery will then be limited to *actual* damages to include the cost of debtor's attorney's fees which, by this time, have mushroomed.

Attorney's fees are often the only damages recoverable by a debtor. If redress must be sought on behalf of a debtor to prevent the harassment of continued billing, then freedom from that continued billing should suffice to provide relief to the debtor and, absent a showing of

---

[7] A debtor may recover actual damages for a creditor's violation of the stay which often equates with recovery of the attorney's fees and costs incurred to stop the violation. When the debtor receives an outright monetary award paid prior to the recovery of any attorney's fees, it creates a carrot that may motivate a debtor to authorize unwarranted litigation.

[8] Emotional distress damages are recoverable for a willful violation of the stay under appropriate circumstances. *See In re Voll*, 512 B.R. 132, 138 (Bankr. N.D.N.Y. 2014) (citing *In re Beebe*, 435 B.R. 95, 99-100 (Bankr. N.D.N.Y. 2010); *In re Seniecle*, No. 06-34763, 2009 WL 2902939, at *2 (Bankr. N.D.N.Y April 20, 2009); *In re Sullivan*, 367 B.R. 54, 65 (Bankr. N.D.N.Y. 2007)). Emotional distress damages are appropriate when a debtor demonstrates by clear and convincing evidence that he suffered significant emotional harm as a result of the creditor's violative conduct that is separate and distinct from the distress generally experienced by a debtor in bankruptcy. Significant emotional harm may be presumed where the circumstances surrounding the creditor's violation are found to be sufficiently egregious. *See, e.g., Voll*, 512 B.R. at 138 (citing *Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1149 (9th Cir. 2004); *Dean v. Carr (In re Dean)*, 490 B.R. 662, 669 (Bankr. M.D. Pa. 2013)); *Seniecle*, 2009 WL 2902939, at *2.

entitlement to emotional distress damages or punitive damages, no separate monetary payment should go to the debtor. Absent a monetary incentive, a debtor may not be so quick to dispatch an attorney to file a motion for one errant billing statement.

The simplicity of addressing non-egregious conduct violative of the stay—which may include the impermissible issuance of one or two monthly billing statements after the filing of bankruptcy— strongly suggests that it is preferable for the bankruptcy practitioner who initially filed the case to directly remedy the violation. This may or may not include the filing of a motion.[9] In this court's opinion, a referral to specialized counsel and a fee sharing agreement between counsel similar to the one here should be informed by a reasonable evaluation of the underlying facts and circumstances and limited to those cases where the creditor's conduct is egregious, which may include persistent conduct in violation of the stay with direct knowledge of the bankruptcy.

*11 U.S.C. § 362(k)(1)*

Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." In this case, the Debtor never sought punitive damages.[10] Debtor's motion seeks only actual damages in the form of emotional distress damages and attorney's fees. As discussed above, because of Debtor's failure to comply with this court's Order, Debtor is limited at this juncture to a claim for attorney's fees. As this court explained in *Voll*,

---

[9]Many attorneys in this district will themselves notify the creditor of the continued billing without engaging in motion practice unless and until that further courtesy notice is ignored. Although not required, the court believes this approach to be the better practice.

[10]Nor would the court have been inclined to grant punitive damages under the facts of this case as it is undisputed that the only contact between Health Center and Debtor consisted of two billing statements, which ceased well before the Motion was ever filed. *Cf. Seniecle*, 2009 WL 2902939, at *3-4.

9

> A debtor may recover attorney's fees and costs even where the debtor has not suffered other compensable harm. In such instances, however, the court must review critically the requested fees to ensure that the court is not "rewarding an excessively litigious approach" to the prosecution of stay violations. *Seniecle*, 2009 WL 2902939, at *3; *see Burkart*, 2010 WL 502945, at *6. The court must balance two important guiding policies. On the one hand, the court must discourage willful violations of the stay. On the other, the court must avoid encouraging debtors' counsel from incurring substantial fees "simply because those fees will be shifted to their adversaries." *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998).

*Voll*, 512 B.R. at 141. However, to recover attorney's fees, the court must find the fees to be both reasonable and necessary, which finding is premised upon the fees being necessary litigation costs. *Id.* at 140-141; *see also In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010); *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998); *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 351 (Bankr. S.D.N.Y. 1998)).

> Courts frequently apply the standards used in determining the reasonableness of compensation under § 330 in determining what fees and costs are reasonable and necessary in the prosecution of a § 362(k) cause of action. The analysis begins with the "lodestar" calculation, *i.e.* a reasonable hourly rate multiplied by the number of hours reasonably expended. The lodestar calculation yields a presumptively reasonable fee that the court may—in its discretion—increase or decrease based upon various case-specific factors.
>
> The initial burden is upon debtor's counsel to show that the services for which compensation is sought were reasonable and necessary. *See In re Abel*, No. 95-11044, 2001 WL 36160133, at *3 (Bankr. D. Vt. May 29, 2001). . . . Even where there are no specific objections to a fee request, "it is incumbent upon the bankruptcy court to conduct its own independent analysis of all applications for compensation." *Id.*

*Voll*, 512 B.R. at 141. (citations omitted.)

Health Center takes great exception to the amount of time spent by Attorney Selbach on this matter, but does not object to the $275 hourly rate charged by Attorney Selbach or to the $150 hourly rate charged for time billed by an unnamed legal assistant. Absent objection, the court shall apply these rates in this case.

10

In determining the number of hours reasonably expended in the prosecution of the Motion, the court "must exclude hours that are excessive, redundant, or otherwise unnecessary." *Voll*, 512 B.R. at 144 (quoting *Watkins v. Guardian Loan Co. (In re Watkins)*, 240 B.R. 668, 679 (Bankr. E.D.N.Y. 1999)). Based upon this court's review of Attorney Selbach's time records, the court excludes a total of (i) .7 hours of Legal Assistant time billable at $150/hour and (ii) 9.9 hours of Attorney Selbach's time billable at $275/hour. The breakdown and explanation for the disallowed time entries follows.

Legal Assistant Time

- The court subtracts .2 hours for the second "lumped" entry of .6, which individual tasks should have been separately itemized to document the reasonableness of time expended on each separate task. The court allows .4 total time for the three tasks listed. These include reviewing a two-page docket on PACER, examining the bankruptcy noticing center's certification of notice sent to the creditor, and determining Health Center's legal entity and proper method of service.

- The court disallows the fourth entry of .3 hours and the fifth entry of .2 hours (subtotal of -.5 hours). The court views the listed "services" as part of office overhead that should not be chargeable to a client. (These tasks include "D[raft, review and/or revise] Agreement to Hire Attorney and Acknowledgement and Notice, Disclosure and Consent to Employment of Counsel and Division of Attorney's Fees" and "Open file").

Attorney Time

- The court disallows the 5/24/14 entry of 2.0 hours and the 05/28/14 entry of 1.2 hours (subtotal of -3.2 hours) for the time spent on the reply memorandum of law in response to Health Center's objection. Counsel filed an 11-page memorandum of law at the time he

initiated this contested matter when he filed the Motion. Counsel's filing of two subsequent memoranda (a 13-page memorandum on 5/28/14 and a 10-page memorandum on 8/27/14, as referenced in the itemized entry below), without first seeking leave of court for permission to do so, was presumptuous, unreasonable and unnecessary.[11]

- The court disallows 3.0 hours reflected for the 08/27/14 entry for preparation of the reply memorandum of law in response to Health Center's memorandum of law and attorney declaration, for the aforementioned reason.

- The court disallows 3.5 hours comprised of (i) 2.4 hours for 7/31/14 entry, (ii) .4 hours for the two 8/1/14 entries (.1 and .3), and (iii) .7 hours for the two 8/7/14 entries (.2 and .5). These hours relate to a motion filed by Attorney Selbach to compel discovery. This court denied the motion as being untimely, as counsel waited until after discovery closed to file the motion but had full knowledge of the basis for the motion well before the close of discovery.[12]

- The court disallows .2 hours for 8/25/14 entry consisting of counsel's review of (i) Attorney O'Shea's letter requesting dismissal of the Motion and (ii) the court's text order limiting Attorney Selbach to present evidence solely on his request for attorney's fees. The requested dismissal and order was based upon Attorney Selbach's failure to file exhibit lists, witness lists and a pre-trial statement pursuant to this court's scheduling

---

[11] Nor, would the court have granted permission to file additional memoranda of law had leave to do so been requested. The court regularly addresses motions for sanctions for violation of the automatic stay and stays abreast of the development of the law in this area. Although Attorney Selbach argues that he has to educate his adversary on the state of the law, the submission of additional pleadings is at the discretion of the court which the court readily grants when the court finds further briefing of the issues to be necessary or helpful. In this case, the court finds that the further memoranda were neither necessary nor helpful. The court further notes that both reply memoranda are substantially similar to those filed by Attorney Selbach in other cases before this court.

[12] This time includes: "D[raft, review and/or revise] Motion on Order to Show Cause for an Amended Scheduling Order and Compelling Discovery" - 2.4; "R[eview] Order Setting Hearing on Shortened Notice" - .1; "D[raft, review and/or revise] letter and fax cover sheet to Attorney O'Shea serving with exhibits and Order Setting Hearing on Shortened Notice" - .3; "R[eview] Attorney Declaration of Attorney O'Shea filed 8/6/14" - .2; and "Appear at motion to compel and extend deadlines" - .5.

12

order. The time involved was necessitated by Attorney Selbach's own omissions and failure to comply with a court order and is not recoverable against the Health Center.

Accordingly, this leaves 1.7 hours billed by the Legal Assistant at $150/hour and 4 hours billed by Attorney Selbach at $275/hour. As such, the presumptively reasonable fee in this case is $1,355, which is the sum of $255 ($150/hr. x 1.7hrs. legal assistant time) plus $1,100 ($275/hr. x 4hrs. attorney time). The court next considers the relevant case-specific factors to determine whether cause exists to further reduce or enhance this fee amount. *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186 n.3 (listing the 12 *Johnson* factors); *see also Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 351-52 (Bankr. S.D.N.Y. 1998).

In addition to Attorneys Esce and Selbach's failure to comply with § 329(a) and Rule 2016(b), Attorney Selbach's application for attorney's fees did not conform in some significant respects to the United States Trustee's Fee Guidelines that are applicable in all cases filed on or after October 22, 1994.[13] The court also observes that the additional filings and sloppy manner in which some of Debtor's pleadings were pieced together unnecessarily increased the cost to defend against the Motion. For example, in both the opening and final paragraphs of Debtor Counsel's Affirmation seeking an order to show cause compelling discovery, counsel seeks an order "imposing sanctions on SCHC for it's (sic) non-compliance with the Order."(Doc. 44). Health Center's counsel, in his responding declaration, devotes a whole section to countering Debtor's request for sanctions against his firm (*See* ¶s 19-22 of Doc. 47). Yet, on the return date of the hearing at oral argument, Debtor's counsel announced that he was not seeking sanctions and that he "didn't realize" it was requested in his papers until "I saw the opposing papers." Attorney Selbach's tendered explanation was that the language in his Attorney Affirmation had

---

[13] The United States Trustee Fee Guidelines are included as Appendix A to 28 C.F.R. § 58 and are published and readily accessible on the United States Trustee's website.

been in "another motion before Judge Davis"[14] and the language had been cut and pasted into the affirmation he filed with this court. The cookie-cutter manner in which attorney affirmations are produced appears to this court to be less about preserving the integrity of the automatic stay and more about fostering a homegrown factory mill of motions that get settled at a cost disproportionate to their reasonable and fair value.

Upon review, the court rejects the fee structure set forth in Attorney Selbach's 2016(b) Statement. Attorney Selbach's failure to comply with § 329(a) by timely filing a 2016(b) Statement constitutes a critical factor, in this court's opinion, to further reduce the requested fees. Disclosure of the fee structure would have clearly helped to define the parameters of an acceptable settlement offer or, alternatively, permit a timely challenge to that fee structure, which would have saved both time and fees. Accordingly, the court reduces the presumptively reasonable fee by an additional $600 and awards attorney's fees in the amount of $755.

*Conclusion*

For the reasons stated herein, Health Center is directed to pay the Selbach Law Firm attorney's fees of $755 as damages to the Debtor for its willful violation of the automatic stay.

So Ordered.

Dated: September 26, 2014      Margaret Cangilos-Ruiz
Syracuse, New York             United States Bankruptcy Judge

---

[14] A reference to my colleague, The Honorable Diane Davis, who sits in the Utica Division of the United States Bankruptcy Court for the Northern District of New York.